IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 08-cv-00416-WDM-KMT

RAYMOND STEVENS,

    Plaintiff,

v.

ARISTEDES ZAVARES, Executive Director, Colorado Department of Corrections, *et al.*,

    Defendants.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

This matter is before me on cross motions for summary judgment (Doc. Nos. 60, 61). After a review of the pleadings and the parties' written arguments, including the motion, response, and reply of each party, I conclude that oral argument is not required. For the reasons that follow, Plaintiff's motion shall be denied and Defendants' Motion granted.

### Background

Plaintiff Raymond Stevens ("Plaintiff") is an inmate in the custody of the Colorado Department of Corrections ("CDOC").[1] In his Third Amended Complaint Plaintiff alleges two claims for relief: denial of his rights to procedural and substantive due process.

---

[1] Plaintiff was released from the custody of the CDOC on April 16, 2007 and began serving his three-year mandatory parole term. However, Plaintiff was subsequently returned to the custody of the CDOC following a parole violation. (Pl.'s Mot. for Summ. J. 2 n.2.)

The defendants are: Aristedes Zavares ("Zavares"), the current Executive Director of the CDOC; Joe Ortiz ("Ortiz"), the former Executive Director of the CDOC, a position he held until January, 2007 (*Id.* ¶ 6); Larry Reid ("Reid"), former Warden of the Colorado State Penitentiary (*Id.* ¶ 7); Mary Carlson ("Carlson"), a supervisor of the Offender Time/Release Operations department at the CDOC (Carlson Aff. ¶1, Ex. A-1 to Defs.' Resp. to Pl.'s Mot. for Summ. J.); and Sharon Sweetland ("Sweetland"), a Time Computation Specialist in the Offender Time/Release Operations Department at CDOC. Except for Zavares, who is being sued only in his official capacity, all other Defendants are being sued in both their individual and official capacities.

The issues of this case all stem from how presentence confinement credit ("PSCC") should be given to Plaintiff on account of three successive and unrelated sentences entered by three different courts. A detailed history is required.

In June, 1991, Plaintiff plead guilty to one count of theft by receiving in Denver County case number 91-cr-464 and was sentenced to eight years imprisonment. (91-cr-464 Mittimus, Ex. A-1 to Defs.' Mot. for Summ. J.) On December 4, 1992, Plaintiff plead guilty to one count of criminal attempt to commit escape in Crowley County case number 92-cr-7 and was sentenced to four years imprisonment, to be served consecutively with all other sentences Plaintiff was then serving. (92-cr-7 J. of Conv., Ex. A-2 to Defs.' Mot. for Summ. J.) Sometime after December 4, 1992 and before February 8, 1998, Plaintiff was granted parole,[2] and was still on parole on February 8,

---

[2] Although it is not entirely clear from the record before me, it appears as though Plaintiff would have been granted discretionary parole from the parole board, rather than mandatory parole, as occurs under the Colorado sentencing scheme today. From 1985 until 1993, the time during which Plaintiff committed the crimes charged in 91-cr-

1998 (Defs.' Mot. for Summ. J. ¶ 4; Pl.'s Resp. to Defs.' Mot. for Summ. J. ¶ 4) when Plaintiff assaulted his ex-wife with the butt of the shotgun (Tr. of Nov. 2, 1998 Hrg. 5:2-24, Ex. 1 to Pl.'s Mot. for Summ. J.).  On March 22, 1998, Plaintiff was arrested and charged for that incident (Case No 98-cr-1622).  He pled guilty to assault and remained in custody for 258 days until he was sentenced on December 10, 1998.  (July 17, 2007 Time Comp. Rep., Ex. 6 to Pl.'s Mot. for Summ. J.)   During that time, he was also serving his sentences on 91-cr-464 and 92-CR-7.  (Carlson affidavit, ¶ 7, Ex. A-1 to Defs' Response (Doc. No. 63-2); Sweetland affidavit, ¶ 6, Ex. A-2 to Defs' Response (Doc. No. 63-3); April 2, 1998 Time Comp. Rep., Ex. A-3 to Defs.' Resp. (Doc. No. 63-4))  In other words, he was given credit in those older cases for the 258 days served.

At the sentencing hearing in Case No. 98-cr-1622, Judge J. Stephen Phillips stated, "The Court is going to sentence you to nine years in the Department of Corrections, giving you credit for 258 days that you have served.  This sentence will be concurrent with 91-cr-464 in Denver County, 92-cr-7 in Crowley County."  (Tr. of Dec. 10, 1998 Hrg. 11:7-11, Ex. 2 to Pl.'s Mot. for Summ. J.)  The mittimus states, "IT IS THE JUDGMENT/SENTENCE OF THIS COURT that the defendant be sentenced to COLO DEPT OF CORRECTIONS FOR 9.00 YEARS . . . 258 day(s) of presentence confinement credit shall be given . . . ."  (98-cr-1622 Judg. of Conv., Sent., Ex. A-3 to Defs.' Mot. for Summ. J.)  It does not refer to older sentences or make any statement regarding concurrent sentencing.

---

464 and 92-cr-7, the legislative scheme in place in Colorado "vest[ed] the parole board with complete discretion to grant or deny parole to offenders . . . ." *People v. Norton*, 63 P.3d 339, 343 (Colo. 2003); *see also* Colo. Rev. Stat. § 17-22.5-403(5).

3

While Plaintiff was serving out his sentences in the CDOC, he became a plaintiff class member in *Montez v. Romer, et al.*, Civil Action No. 92-cv-870-EWN-OES (now *Montez v. Owens*, Civil Action No. 92-cv-870-JLK-OES), a class-action lawsuit against the CDOC ("*Montez*"), alleging violations of the Americans with Disabilities Act. (Third Am. Compl. ¶ 15.) On August 24, 2005, the Colorado Attorney General's Office sent Plaintiff a letter offering to settle his *Montez* claim for $50, but the parties did not reach an agreement at that time. (Sept. 20, 2005 Letter to Pl., Ex. A-9 to Defs.' Mot. for Summ. J.) In approximately June, 2006, Plaintiff alleges two CDOC personnel came to his prison cell and gave him a document offering to settle his claim in *Montez* for $50, which Plaintiff refused. (Third Am. Compl. ¶¶ 16-19.) Upon his refusal, the CDOC personnel allegedly told Plaintiff "he would sit in prison for refusing to sign the document." (*Id.* ¶ 18.) On June 15, 2007, the Colorado Attorney General's Office sent Plaintiff another letter offering to settle his *Montez* claim for $100, but there is no indication that Plaintiff accepted that offer. (June 15, 2007 Letter to Pl., Ex. A-26 to Defs.' Mot. for Summ. J.)

The unrebutted affidavits of Carlson (Doc. No. 63-2) and Sweetland (Doc. No. 63-3) establish that Plaintiff received PSCC against the earlier convictions in 91-cr-464 and 92-CR-7 until his December 10, 1998 sentencing in 98-cr-1622. From that sentencing until July 17, 2006, CDOC records showed the 258 days was also being credited against Plaintiff's last sentence, nine-year sentence in 98-cr-1622. (Dec. 24, 1998 Time Comp. Rep., Ex. 4 to Pl.'s Mot. for Summ. J.; May 11, 2006 Time Comp. Rep., Ex. 5 to Pl.'s Mot. for Summ. J.; July 17, 2006 Time Comp. Rep., Ex. 6 to Pl.'s Mot. for Summ. J.) On May 11, 2006, based upon the 258 days of PSCC being credited

against Plaintiff's sentence in 98-cr-1622, along with earned time credits Plaintiff had accumulated, the CDOC records reflected Plaintiff's anticipated mandatory release date as July 28, 2006. (May 11, 2006 Time Comp. Rep., Ex. 5 to Pl.'s Mot. for Summ. J.) However, on July 17, 2006, Defendant Sweetland made an adjustment to Plaintiff's time computation report. (Sweetland Aff. ¶¶ 12-14, Ex. A-2 to Defs.' Resp. to Pl.'s Mot. for Summ. J.) That adjustment moved the 258 days PSCC that were previously being credited against the 98cr-1622 sentence, and instead credited them against Plaintiff's sentences in his earlier cases, 91-cr-464 and 92-cr-7, changing Plaintiff's anticipated mandatory release date to April 16, 2007. (July 17, 2006 Time Comp. Rep., Ex. 6 to Pl.'s Mot. for Summ. J.) Defendant Sweetland noted on the report, "CALCULATION PURSUANT TO CRS 18-1.3-405," and further indicated, "PRESENTENCE CONFINEMENT ON CASE 98CR1622 IS AWARDED AS TIME SERVED BETWEEN 03/22/98 AND 12/10/98." (*Id.*) According to Defendants, "The time comp technician calculating [Plaintiff's] time comp on December 24, 1998 erroneously applied the 258 days [PSCC] to [Plaintiff's] most recent conviction. The result was that [Plaintiff] received duplicate credit for the 258 days of [PSCC]," because "[a]pplying the 258 days [PSCC] to the later sentence creates a duplication of credit and incorrectly shortens the later sentence if not corrected." (Carlson Aff. ¶ 10, Ex. A-1 to Defs.' Resp. to Pl.'s Mot. for Summ. J.)

Defendants assert that pursuant to Colo. Rev. Stat. § 18-1.3-405 and *People v. Norton*, 63 P.3d 339 (Colo. 2003), they were required by law to credit Plaintiff's 258 days of PSCC against his earlier sentences in 91-cr-64 and 92-cr-7, rather than his sentence in 98-cr-1622. (Defs.' Mot. for Summ. J. 9.) Defendants further contend that

5

on July 17, 2006, Defendant Sweetland was engaged in a routine review of Plaintiff's sentence calculation and time computation, due to the fact that Plaintiff's mandatory release date was soon approaching, when she noticed what she described as the "error that resulted in [Plaintiff] receiving double credit for the [PSCC] time." and changed the release to April 16, 2007. (Sweetland Aff. ¶¶ 12-13, Ex. A-2 to Defs.' Resp. to Pl.'s Mot. for Summ. J.) Although Defendants admit that it is their practice to contact the sentencing court for clarification in cases in which the court's order is unclear or appears to be contrary to Colorado law, (Carlson Dep. 45, Ex. 13 to Pl.'s Mot. for Summ. J.) they did not do so in this case (Sweetland Dep. 50, Ex. 14 to Pl.'s Mot. for Summ. J.).

Plaintiff argues that the initial July 28, 2006 release date properly reflected the 258 days PSCC he was given in 98-cr-1622. (*See* Pl.'s Mot. for Summ. J.) Plaintiff further contends that Defendants were not required by law to credit the 258 days of PSCC against his earlier sentences because "the sentencing court in Case No. 98-cr-1622 fully intended the presentence credit awarded in that case to be applied to Case No. 98-cr-1622." (Pl.'s Mot. for Summ. J. 13.) Plaintiff appears to argue, at least by implication, that his refusal to accept a settlement in *Montez* was the impetus for Defendant Sweetland's adjustment. (*Id.*) Regardless of the reason for the adjustment, Plaintiff contends that he was entitled to have the 258 days PSCC credited against his sentence in 98-cr-1622, with a resulting July 28, 2006 mandatory release date, and accordingly, that he was entitled to procedural safeguards prior to the July 17, 2006 adjustment by Defendant Sweetland. (Pl.'s Mot. for Summ. J. 13-14.)

Plaintiff alleges that "[d]uring his unlawful confinement and as a result thereof,

6

[Plaintiff] suffered from a severe medical condition that included substantial internal bleeding," and that "despite his obvious need, [Plaintiff] was denied basic medical care until [Plaintiff] required emergency medical services." (Third Am. Compl. ¶ 26.) Plaintiff further asserts that the CDOC staff was instructed not to help [Plaintiff], that staff who did help Plaintiff was transferred away from him or their employment was terminated, that Defendants denied Plaintiff's requests for medical care, and that Defendants failed to follow medical orders and advice regarding Plaintiff's required treatment. (*Id.* ¶¶ 27-30.)

Once Plaintiff's mandatory release date was adjusted, Plaintiff attempted to bring this perceived error to the attention of a number of CDOC officials. On August 2, 2006, Plaintiff filed a grievance with the CDOC, which was denied because, according to the administrative regulations, "[the] grievance procedure can not be used to seek review of . . . sentence computation." (Aug. 2, 2006 Grievance Form, Ex. 7 to Pl.'s Mot. for Summ. J.; Aug. 10, 2006 Letter to Pl., Ex. 8 to Pl.'s Mot. for Summ. J.) Plaintiff filed another grievance with the CDOC on August 31, 2006, which was also denied because "the grievance process [was] not the proper venue for relief." (Aug. 31, 2006 Grievance Form, Ex. 9 to Pl.'s Mot. for Summ. J.) Plaintiff filed a third grievance with the CDOC on September 27, 2006, which was also denied because "[t]he subject of [the] grievance [was] not an issue which the grievance process was designed to address." (Sept. 27, 2006 Grievance Form, Ex. A-19 to Defs.' Mot. for Summ. J.; June 14, 2007 Letter to Pl., Ex. A-20 to Defs.' Mot. for Summ. J.) Plaintiff also reportedly sent a letter to Ortiz then the Executive Director of the CDOC. (Pl. Letter to Ortiz, Ex. 10 to Pl.'s Mot. for Summ. J.)

On September 5, 2006, Plaintiff filed a Petition for Writ of Habeas Corpus in the Denver County District Court, naming Ortiz as respondent. (Sept. 5, 2006 Habeas Petition, Ex. A-22 to Defs.' Mot. for Summ. J.) The petition was denied on September 22, 2006 because it was not accompanied by the appropriate paperwork. (Sept. 22, 2006 Habeas Order, Ex. 12 to Pl.'s Mot. for Summ. J.) On September 11, 2006, attorney J. Scott McComas sent a letter to Defendant Carlson on Plaintiff's behalf attempting to correct the perceived error. (Sept. 11, 2006 Letter to Carlson, Ex. 11 to Pl.'s Mot. for Summ. J.) On November 20, 2006, Plaintiff filed a Petition for Writ of Habeas Corpus in this court naming Larry Reid, then the Warden at Colorado State Penitentiary ("CSP") as respondent. (Nov. 20, 2006 Habeas Petition, Ex. A-24 to Defs.' Mot. for Summ. J.) The petition was denied on February 20, 2007 because it was time-barred. (Feb. 20, 2007 Habeas Order, Ex. A-25 to Defs.' Mot. for Summ. J.) Plaintiff initiated this action February 28, 2008. (Doc. No. 1.)

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

8

summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998)). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.* (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Indeed, the plaintiff must set forth specific facts "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing Fed. R. Civ. P. 56(e)). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact and survive summary judgment, *Simms*, 165 F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)), nor are unsupported conclusory allegations, *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (citing *L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)). When the opposing party fails to "set out

specific facts showing a genuine issue for trial . . . summary judgment should, if appropriate, be entered against that party." Fed.R.Civ.P. 56(e)(2). Indeed, a "nonmovant acts, or fails to act, at its peril." *Adler*, 144 F.3d at 672.

## Discussion

Plaintiff's first claim for relief alleges that his procedural due process rights were violated when Defendants "unlawfully revoked [Plaintiff's] [PSCC], thereby confining [Plaintiff] for an additional two hundred and fifty-eight (258) days beyond his lawful release date," without any advance notice, an opportunity to call witnesses or present evidence, or the opportunity to be heard. (Third Am. Comp. ¶¶ 35-39.) Plaintiff claims summary judgment is appropriate on this claim due to his "statutory right to credit for court-ordered presentence confinement time," (Pl.'s Mot. for Summ. J. 13) and because "once [Plaintiff's] earlier sentences were discharged, Defendants no longer had authority to assign presentence confinement credit to those earlier sentences" (Pl.'s Reply in Supp. of Pl.'s Mot. for Summ. J. 10) (citing *Meredith v. Zavaras*, 954 P.2d 597, 598-99 (Colo. 1998)). Defendants claim summary judgment in their favor is appropriate on this claim because they contend they were required by law, pursuant to Colo. Rev. Stat. § 18-1.3-405, *People v. Norton*, 63 P.3d 339 (Colo. 2003), and *People v. Dixon*, 133 P.3d 1176 (Colo. 2006), "to adjust [Plaintiff's] time computation in a manner that reflected credit for 258 days of court-ordered pre-sentence confinement being applied to his earlier convictions," (Defs.' Mot. for Summ. J. 7) and because "[a]n inmate is not entitled to double credit for the same period of time served" (Defs.' Resp. to Pl.'s Mot. for Summ. J. 12).

Plaintiff's second claim for relief alleges, "The unlawful imprisonment of [Plaintiff]

10

for an additional two hundred and fifty-eight (258) days" violated his substantive due process rights under the Fifth and Fourteenth Amendments and the corresponding provisions of the Colorado Constitution. (Third Am. Compl. ¶ 46.) Plaintiff further alleges that as a result of Defendants' actions, including unlawfully confining Plaintiff and depriving him of his constitutional rights, Plaintiff "suffered damages and injuries, both emotional and physical," (*id.* ¶ 48) that his emotional distress "physically manifested itself in the worsening of [Plaintiff's] medical condition," (*id.*¶ 49) that "[b]ut for [Plaintiff's] unlawful confinement and loss of liberty, [Plaintiff] would have been able to seek appropriate medical treatment which he was otherwise denied," (*id.* ¶ 50) and that Defendants' actions were "wanton and willful, in total disregard of [Plaintiff's] constitutional and statutory rights and shock the conscience" (*id.* ¶ 47). Plaintiff claims summary judgment is appropriate on this claim because "Defendants' actions in continuing to incarcerate [Plaintiff] . . . for 258 days beyond his original mandatory release date unreasonably infringed upon [Plaintiff's] recognized liberty interests" (Pl.'s Mot. for Summ. J. 14). He contends that Defendants' decision not to contact the sentencing court to determine its intent regarding the PSCC awarded to Plaintiff "rise[s] to the level of deliberate indifference sufficient to support [Plaintiff's] claim that [Defendants] violated his substantive due process rights," (*id.*) and that "the unlawful incarceration of a man experiencing severe medical distress for 258 days would shock the conscience of any reasonable person" (*id.*). Defendants claim summary judgment in their favor is appropriate on this claim because "there is no evidence [Plaintiff] was ever deprived of a fundamental liberty interest" (Defs.' Resp. to Pl.'s Mot. for Summ. J. 13) and because "[a]bsent evidence of 'severe medical distress' and 'unlawful

11

incarceration,' there is nothing to show that Defendants acted in a manner that would 'shock the judicial conscience' of the court" (*id.*).

Both claims are premised on CDOC's ultimate refusal to give Defendant PSCC for the 258 days against his latest sentence in 98-cr-1622. In essence, Plaintiff claims he was deprived of his liberty interests to be free of detention in violation of the due process clause of the Fourteenth Amendment guaranteeing that no state shall deprive a person of "life, liberty, or property without due process of law." U.S. Const. Amend. IV, § 1. Procedurally, he claims denial of that liberty interest without being afforded adequate process. *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001); *Henigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Substantively, he asserts infringement on that liberty interest or the arbitrary deprivation thereof that shocks the conscience. *Dias v. City and County of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006).

There is no genuine issue of material fact concerning the 258 days of PSCC given Plaintiff: he was given the full 258 days of concurrent credit against 91-cr-464 and 92-cr-7, and none against 98-cr-1622. Accordingly the issues are to be resolved at this stage as a matter of law.

Plaintiff claims that Colo. Rev. Stat. § 18-1.3-405 gives him a protected interest in having the 258 days PSCC he acquired while awaiting disposition of 98-cr-1622 credited against his sentence in that case, rather than against his sentences in 91-cr-464 and 92-cr-7. Colo. Rev. Stat. § 18-1.3-405 (2009) states:[3]

---

[3] The statute is substantially the same today as it was in November and December, 1998, when Plaintiff plead guilty and was sentenced in 98-cr-1622.

> A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. The period of confinement shall be deducted from the sentence by the department of corrections. A person who is confined pending a parole revocation hearing is entitled to credit for the entire period of such confinement against any period of reincarceration imposed in the parole revocation proceeding. The period of confinement shall be deducted from the period of reincarceration by the department of corrections. <u>If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.</u> Emphasis added.

It is undisputed that Plaintiff was on parole from the prior offenses when the February 8, 1998 incident occurred. (Defs.' Mot. for Summ. J. ¶ 4; Pl.'s Resp. to Defs.' Mot. for Summ. J. ¶ 4.) Accordingly, the parole provision of the last sentence of the statute is the provision pertinent here.

This section has spawned significant litigation in the Colorado Supreme

---

However, minor changes have been made for style and to make the text gender-neutral. The statute was also recently amended to add the clause regarding offenders confined pending a parole revocation hearing, which appears just before the last sentence of the statute. At the time relevant to this action, the statute was codified at Colo. Rev. Stat. § 16-11-306, but was repealed and moved to its current location on October 1, 2002. I refer to the statute by its current section number in the interest of clarity, and because that is what the parties have done in their briefing.

Court–particularly in cases such as this where a defendant has prior unexpired sentences at the time he is arrested for the new offense and spends time in custody until the new sentencing. Cases begin with *Meredith v. Zavaras*, 954 P.2d 597 (Colo. 1988). There the defendant was sentenced to prison for a burglary conviction, was paroled and on parole when he committed an aggravated motor vehicle theft. *Id.* at 598. The defendant acquired 210 days of PSCC awaiting disposition of the second case. *Id.* The trial court in the second case sentenced the offender to nine years in prison, to run concurrent with the offender's sentence in the first case. *Id.* In a *pro se* motion to the trial court, the defendant alleged that after the first sentence had been discharged, the CDOC transferred the 210 days PSCC to that first sentence. *Id.* at 598-99. At a hearing on the issue, the prosecution did not contest this and the trial court later ordered CDOC to recredit 210 days PSCC to the later sentence.[4] *Id.* at 599. Even with this express order the CDOC did not comply. Upon appeal, the Colorado Supreme Court determined that the CDOC was required to comply with the trial court's order and ordered that the defendant be credited the 210 days PSCC. *Id.* at 603. Plaintiff incorrectly cites *Meredith* for the proposition that "once Plaintiff's earlier sentences were discharged, Defendant no longer had authority to assign pre-sentence confinement credit to those earlier sentences." (Plaintiff's Reply in Supp. of Plaintiff's Mot. for Summ. J. 10). Although the trial court so held in *Meredith*, the reasoning for the Colorado

---

[4]Thereafter, however, in a petition for rehearing, the prosecution averred that the defendant had been on parole when he was sentenced for the second felony and so the credit should be applied to the first sentence. The trial court denied the petition on the grounds that the prosecutor could have raised the issue before the hearing.

Supreme Court was different[5] and concerned only with the fact that prosecution did not appeal the trial court's order: "Were we to hold otherwise and permit the CDOC to decline to comply with the unappealed Denver court's orders we could undermine the power of the judicial system to interpret the laws and impose criminal sentences." *Id.* at 603. Although Plaintiff relies on it, *Meredith* is not dispositive. The prior sentences were still in force when Judge Phillips calculated and applied the credit here. Moreover, there was no specific unappealed order of the trial court resolving the issue in this case.

The next case, *People v. Gangruth*, 990 P.2d 697 (Colo. 1999) is again a case dealing with sentencing after a prior conviction. At trial the district court ordered 200 days of PSCC against the second sentence even though the first sentence had not expired. *Id.* at 698. This order was not appealed. However, the DOC assigned the PSCC to the previous sentence. Following motions the trial court ultimately ordered that the PSCC should be applied in the later case; again, no appeal was taken. *Id.* at 699. The DOC resisted implementation until the Supreme Court noted that the trial court's "unappealed order . . . creates a clear right to relief and a duty to comply." *Id.* Absent a jurisdictional defect the court order is valid and must be implemented by the DOC. *Id.*

*Gangruth* was followed by *People v. Ostuni*, 5 P.3d 531 (Colo. 2002). While on parole for a prior conviction Ostuni was sentenced to six years to run concurrently with the prior conviction. The court awarded 420 days of PSCC. *Id.* at 532. The court describes the *mittimus* to be in a chart or matrix format with "'6.00 YEARS' appearing in

---

[5]"Whether or not the Denver Court properly focused on the discharge as of the second sentencing date or as of the date that DOC transferred the credit to the first sentence is not before us." 954 P.2d at 600 n.4.

a column to the right of the category 'DEPARTMENT OF CORRECTIONS' and '420.00 DAYS' appearing in a column to the right of the category 'CREDIT FOR TIME SERVED,' with respect to each count." *Id.* at n. 2. The Colorado court distinquished *Meredith* and *Gangruth* and emphasized the issue presented to it. "Unlike those cases, however, in which the question of applying the credits was litigated by the district courts and expressly resolved against the Department, the instant case involves construction of the sentencing order itself." *Id.* at 533. The court concluded that section 405 "imposed a duty on the trial court to make an explicit finding of the amount of presentence confinement credit to which the offender is entitled and to include that finding" in his *mittimus*. *Id.* at 533-4. Importantly, the court concluded that the statute "reserved to the Department [CDOC] the duty to deduct this period of confinement from the sentence." *Id.* at 534. On the facts of that case, the court ultimately concluded that a notation of "credit for time served" on the *mittimus* "must be construed as an order for a specific amount of credit to which the defendant is entitled by statute, but not a specific method for applying that credit to the defendant's entire sentence or for calculating the defendant's ultimate parole eligibility or mandatory release dates." *Id.* at 535.

In *People v. Norton*, 63 P.3d 339 (Colo. 2003), the Colorado Supreme Court dealt with the issue of the impact of Section 405 on discretionary as opposed to mandatory parole after the section had been amended. The Court determined, based on the plain language of the statute, as well as the legislative history, that the statute "requires . . . an offender . . . who acquires PSCC as a result of being on mandatory parole, [to] apply that PSCC toward the parole component of his previous offense" as

16

opposed to applying it to the new sentence. *Id.* at 348. In particular the court viewed "this as the only means by which to give effect to the General Assembly's intent to prevent the award of duplicative credit to offenders who commit a new crime while serving either incarceration component or the parole component of a previous felony offense." *Id.*

Finally in *People v. Dixon*, 133 P.3d 1176 (Colo. 2006) the defendant was serving suspended sentences when arrested on a new charge. The suspended sentences were re-imposed and, when sentenced on the new charge, the court awarded 174 days of PSCC which was noted on the *mittimus* and the *mittimus* also noted that the sentences would run concurrently. CDOC applied the PSCC to the older sentences and the defendant complained to the district court which entered a minute order stating: "In response to defendant's motion for 174 days credit for time served, . . . court sends DOC time release and defendant copy of original *mitt*, which did award defendant 174 days credit." *Id.* at 1177. In response to relief sought in the nature of a mandamus, the Colorado Supreme Court referred to the *Meredith/Gangruth* rule as interpreted by *Ostuni* and noted that "where a question of presentence confinement credit has been litigated in the district court, the Department is bound to enforce the district court's order unless and until it is reversed by a higher court. . . . Absent an order clearly directing the Department to apply presentence confinement credit in a particular manner, however, the credit for time served noted on a *mittimus* must be understood simply as a factual finding of the period of time the defendant spent in confinement prior to sentencing." *Id.* The court concluded that the district court in *Dixon* "made no attempt to impose a specific method of calculation on the Department." As a consequence, a

17

notation "of credit for time served on a *mittimus* should not be presumed to exceed the trial court's statutory authority or to impose limitations on the Department's ability to comply with its legislative mandate, without a clear intention to do so." *Id* at 1178.

With this series of cases, the Colorado Supreme Court teaches that, in general, Section 405 mandates that trial courts determine PSCC and note it in the *mittimus* while the CDOC determines how to apply the PSCC--which generally means that, as mandated by that Section, the PSCC is applied to the previous offense. The only exception to that general rule is the *Meredith/Gangruth* exception as articulated by *Ostuni* and *Dixon*, namely, if the question has been litigated at the trial court which rules otherwise and that ruling has not been appealed. *Dixon*, 133 P.3d at 1177. ("Where a question of presentence confinement has been litigated in the district court, the Department is bound to enforce the district court's order unless and until it is reversed by a higher court.")

Applying those principles to this case, nothing in the record indicates that the issue was litigated before Judge Phillips or that he decided application of PSCC as a disputed issue. Accordingly, the ligation threshold has not been crossed. If one were to assume or disregard the litigation requirement, the language used by Judge Phillips is not a clear statement of intent to apply PSCC in a particular manner as demonstrated by the Colorado precedent. For example, in *Meredith* the court made specific findings: "I find that, in accordance with the sentencing judge's *mittimus* in this case, defendant was indeed entitled to 210 days [PSCC] against his sentence. I also find that DOC correctly awarded defendant these 210 days of credit in its initial time computations. However, I also find that DOC transferred these credits to defendant's burglary

conviction [the first sentence], and that at the time of this transfer defendant had already discharged its burglary sentence. Accordingly, I conclude that the transfer of these credits was erroneous, and not within DOC's authority." 954 P.2d at 599. In *Gangruth*, the trial court ordered: "that the Department of Corrections shall grant [defendant] 200 days of presentence confinement in this case. . . . The Department of Corrections shall not employ [applicable statute] to transfer this credit to any other case." 990 P.2d at 699. This clear language directly ordering the Department to apply PSCC in a particular fashion in sharp contrast with the general language of Judge Phillips quoted above. Judge Phillips did not refer to the relevant statute, he did not specify what sentence the PSCC was to be applied against nor did he specifically state that the credit should be applied in "this case."

Further, if one compares Judge Phillips' non-specific language to that found in *Ostuni* and *Dixon* they are similar in the sense that they contain the imposition of the sentence, a determination of the PSCC and reference to concurrency. As the Colorado Supreme Court concluded in *Ostuni* and *Dixon*, I also reach the conclusion that Judge Phillips' statement is not "not an order clearly directing the Department to apply presentence confinement in a particular manner." Based upon the uncontested material facts, Plaintiff cannot prove any entitlement to application of his PSCC to the 1998 conviction as there is no evidence that the issue was litigated or that an order entered clearly directing such application. Absent such clear order the determination rests with CDOC under the statute as interpreted by the Colorado Supreme Court. Even though it is undisputed that the CDOC did mistakenly carry the credit against the 1998 conviction on its books for a time, its error does not create a liberty interest on behalf of the

prisoner. As a consequence, Plaintiff has failed to show he has any liberty interest at risk upon which to base a procedural or substantive due process claim. Judgment in Defendants' favor should enter.

Accordingly, it is ordered:

1. Plaintiff's motion for summary judgment (Doc. No. 60) is denied;

2. Defendants' motion for summary judgment (Doc. No. 61) is granted;

3. This case shall be dismissed with prejudice; and

4. The parties shall bear their own costs and expenses.

DATED at Denver, Colorado, on March 29, 2010.

BY THE COURT:

s/ Walker D. Miller

s/ Walker D. Miller
United States Senior District Judge